■ John Davis et al., Appellants, v Citibank, N.A., et al., Respondents. [984 NYS2d 388]—

In an action, inter alia, to recover damages for breach of contract and fraud, the plaintiffs appeal from an order of the Supreme Court, Nassau County (Mahon, J.), dated May 1, 2012, which granted the defendants' motion to dismiss the amended complaint pursuant to CPLR 3211 (a).

Ordered that the order is affirmed, with costs.

In November 1990, the plaintiffs obtained a loan from the defendant Citimortgage, Inc. (hereinafter Citimortgage), and in return gave Citimortgage a mortgage on their home in Hempstead. In 2009, the plaintiffs began experiencing financial difficulties and, on July 28, 2009, they entered into a trial period

plan (hereinafter TPP) agreement with Citimortgage in accordance with the federal Home Affordable Modification Program (hereinafter HAMP), pursuant to which they were to remit a reduced monthly payment for a period of three months. The TPP agreement provided that if the plaintiffs met all HAMP requirements and remitted the reduced monthly payments during the TPP period, Citimortgage would offer them a permanent HAMP loan modification, the details and terms of which the TPP did not set forth. Citimortgage accepted the plaintiffs' reduced payments until June 2010, which was well beyond the three-month trial period. In June 2010, Citimortgage denied the plaintiffs' application for a permanent HAMP loan modification, and informed them that they were $34,673.19 in arrears on the mortgage loan.

Immediately after Citimortgage denied the plaintiffs a permanent HAMP loan modification, the plaintiffs filed for chapter 13 bankruptcy protection (see 11 USC §§ 1301-1330) and, in their bankruptcy petition, they listed the original Citimortgage mortgage, but not the TPP agreement. Approximately one year later, in May 2011, the United States Bankruptcy Court for the Eastern District of New York dismissed the plaintiffs' bankruptcy petition for failure to make plan payments.

The plaintiffs commenced this action in September 2011 against Citimortgage and Citibank, N.A., alleging in their amended complaint that the defendants breached the TPP agreement, and asserting causes of action alleging, inter alia, breach of contract, fraud in the inducement, promissory estoppel, and a violation of General Business Law § 349. The defendants moved to dismiss the amended complaint pursuant to CPLR 3211 (a), arguing that there was no private right of action against a lender or loan servicer under the HAMP, that the plaintiffs were judicially estopped from pursuing this action since they failed to disclose the TPP agreement in their bankruptcy petition, and that each of the causes of action asserted in the amended complaint failed to state a cause of action. The Supreme Court granted the motion, concluding that the plaintiffs' failure to list the "outstanding mortgage obligation" in their bankruptcy petition judicially estopped them from prosecuting this action. The plaintiffs appeal. We affirm, albeit on a different ground.

"The doctrine of judicial estoppel or estoppel against inconsistent positions precludes a party from taking a position in one legal proceeding which is contrary to that which he or she took in a prior proceeding, simply because his or her interests have changed" (*Festinger v Edrich*, 32 AD3d 412, 413 [2006]; *see*

*Matter of Edson v Southold Town Zoning Bd. of Appeals*, 102 AD3d 687, 688 [2013]; *Matter of New Cr. Bluebelt, Phase 4*, 79 AD3d 888, 890 [2010]). The twin purposes of the doctrine are to protect the integrity of the judicial process (*see New Hampshire v Maine*, 532 US 742, 749-750 [2001]) and "to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings" (*Bates v Long Is. R.R. Co.*, 997 F2d 1028, 1038 [2d Cir 1993]). "[T]he integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets" (*Rosenshein v Kleban*, 918 F Supp 98, 104 [SD NY 1996]; *see Azuike v BNY Mellon*, 962 F Supp 2d 591, 599 [SD NY 2013]). Accordingly, "[j]udicial estoppel is often applied 'to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy' " (*Azuike v BNY Mellon*, 962 F Supp 2d at 598, quoting *Ibok v SIAC-Sector Inc.*, 470 Fed Appx 27, 28 [2d Cir 2012]; *see Hamilton v State Farm Fire & Cas. Co.*, 270 F3d 778, 783 [9th Cir 2001]). Generally, however, the doctrine "does not apply in the absence of a final determination in the bankruptcy proceeding endorsing the party's inconsistent position concerning his or her assets" (*Koch v National Basketball Assn.*, 245 AD2d 230, 231 [1997]; *see Matter of Miller [Berti]*, 1 AD3d 885 [2003]), unless the dismissal was the functional equivalent to a discharge (*see Kunica v St. Jean Fin., Inc.*, 233 BR 46, 55 [SD NY 1999]; *B.N. Realty Assoc. v Lichtenstein*, 21 AD3d 793, 798 [2005]).

Here, the dismissal of the plaintiffs' bankruptcy proceeding for failure to make plan payments was not the functional equivalent of a discharge, as such dismissal did not constitute an adoption by the Bankruptcy Court of the plaintiffs' characterization of their assets (*see Saini v Cinelli Enters.*, 289 AD2d 770, 773 [2001]; *McIntosh Bldrs. v Ball*, 264 AD2d 869, 870 [1999]). Accordingly, although it is undisputed that the plaintiffs did not disclose, in their bankruptcy petition, the existence of the TPP agreement that forms the basis of their claims in this action, the doctrine of judicial estoppel does not bar this action (*see Koch v National Basketball Assn.*, 245 AD2d 230 [1997]; *Matter of Miller [Berti]*, 1 AD3d 885 [2003]).

Nevertheless, we affirm the order on the ground that the amended complaint fails to state a cause of action, since no private right of action exists under HAMP. "When, as here, a statute does not provide an express private right of action, the courts will imply a private right of action only upon examination of the following three factors: (1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action

would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme" (*Goldman v Simon Prop. Group, Inc.*, 58 AD3d 208, 214-215 [2008] [internal quotation marks omitted]).

As to the first factor, the Emergency Economic Stabilization Act of 2008 (12 USC §§ 5201-5261 [hereinafter the EESA]), which authorized the United States Department of the Treasury to promulgate the HAMP, was enacted "to immediately provide authority and facilities that the Secretary of the Treasury can use to restore liquidity and stability to the financial system of the United States" (12 USC § 5201 [1]) and "to ensure that such authority and such facilities are used in a manner that (A) protects home values, college funds, retirement accounts, and life savings; (B) preserves homeownership and promotes jobs and economic growth; (C) maximizes overall returns to the taxpayers of the United States; and (D) provides public accountability for the exercise of such authority" (12 USC § 5201 [2]). Similarly, section 201 (a) (2) (A) (i) of the Helping Families Save Their Homes Act of 2009 (Pub L 111-22, § 201 [a] [2] [A] [i], 123 US Stat 1632, 1638) simply articulated a congressional finding that, in order to reduce the number of foreclosures and stabilize real property values, mortgage lenders should be given authorization to modify mortgage loans consistent with applicable guidelines promulgated by the United States Department of the Treasury pursuant to EESA. Thus, although financially struggling homeowners may derive a benefit from the HAMP, that program was not promulgated solely for their particular benefit (*see Miller v Chase Home Fin., LLC*, 677 F3d 1113, 1116 [11th Cir 2012]). As to the second factor, the underlying purpose of the HAMP is to incentivize mortgage loan servicers to reduce monthly mortgage payments and, thus, prevent avoidable home foreclosures (*see id.*). Accordingly, a private right of action against a lender or loan servicer arising from an alleged breach of a TPP agreement is inconsistent with the purpose of HAMP, as judicial recognition of such a private right of action would deter lenders and loan servicers from participating in the HAMP (*see id.*). As to the third factor, the EESA expressly provides for civil actions by the Secretary of the Treasury (*see* 12 USC § 5229 [a] [1]) and for actions seeking equitable relief against the Secretary of the Treasury (*see* 12 USC § 5229 [a] [2], [3]), but makes no reference to private rights of action by borrowers against mortgage lenders or loan servicers. Moreover, given that, as noted above, private rights of action could conceivably deter lenders and loan servicers from participating in the HAMP, which would, in turn, undermine the HAMP's purpose, allowing for a private right of action would

be inconsistent with the legislative scheme of EESA. Since the plaintiffs' claims here are intertwined with the defendants' alleged obligations under the HAMP, and as no private right of action exists under the HAMP, the Supreme Court should have granted the defendants' motion to dismiss the amended complaint on the ground that it failed to state a cause of action (*see* CPLR 3211 [a] [7]; *Wheeler v Citigroup*, 938 F Supp 2d 466, 471 [SD NY 2013]; *Miller v Chase Home Fin., LLC*, 677 F3d at 1116).

In light of our determination, we need not reach the parties' remaining contentions. Rivera, J.P., Lott, Roman and Hinds-Radix, JJ., concur.