OPINION OF THE COURT
Richard M. Platkin, J.
This is an action to foreclose upon a residential mortgage. Plaintiff US Bank National Association, as trustee for SASCO Mortgage Loan Trust 2006-RF4 (SASCO Trust), moves for an order: (1) granting summary judgment against defendant Grady McMullin; (2) striking defendant’s answer and dismissing the affirmative defenses and counterclaims alleged therein; (3) entering a default judgment against the remaining non-appearing and non-answering defendants;[1] (4) reforming the mortgage to include the legal description of the property; (5) amending the caption to remove the “John Doe” defendants; and (6) appointing a referee to compute. Defendant opposes the motion and cross-moves for, among other things, summary judgment dismissing the complaint.
Background
On June 24, 2003, defendant and non-appearing defendant Tiffany R. Coles executed a note in favor of Homestead Funding Corp. in the amount of $92,131, which was secured by a mortgage insured by the Federal Housing Administration (FHA), a division of the United States Department of Housing and Urban Development (HUD). Defendant and Coles defaulted on their repayment obligations and, in June 2006, entered into a loan modification agreement with Wells Fargo Home Mortgage, Inc. The borrowers defaulted again by failing to make the payments due and owing on and after March 1, 2009. Plaintiff commenced this action in May 2012 to foreclose on the mortgage.
Defendant answered and alleged 40[2] affirmative defenses and 11 counterclaims, including allegations of breach of contract, violations of various HUD regulations, and lack of standing. Settlement conferences were held before the court on January 17, 2013, February 28, 2013, April 25, 2013 and June 6, 2013, with defendant represented by counsel at each such *1056 appearance. At the June 6, 2013 conference, the court was advised that defendant was ineligible for a loan modification under the FHA Home Affordable Modification Program (HAMP) and that non-HAMP options were unaffordable to defendant. At that point, both sides agreed that this case should be released from the Settlement Conference Part, and the instant motion practice ensued.[3]
Analysis
A plaintiff in a mortgage foreclosure action establishes its prima facie entitlement to judgment as a matter of law by producing the mortgage, proof of the unpaid debt and evidence of the default (see Loancare v Firshing, 130 AD3d 787 [2d Dept 2015]; Wells Fargo Bank, N.A. v Erobobo, 127 AD3d 1176 [2d Dept 2015], lv dismissed 25 NY3d 1221 [2015], appeal dismissed 26 NY3d 1006 [2015]). Upon such a showing, the burden shifts to the defendant “ ‘to demonstrate the existence of a triable issue of fact as to a bona fide defense to the action’ ” (Cochran Inv. Co., Inc. v Jackson, 38 AD3d 704, 705 [2d Dept 2007], quoting Mahopac Natl. Bank v Baisley, 244 AD2d 466, 467 [2d Dept 1997], lv dismissed 91 NY2d 1003 [1998]).
In support of its motion, plaintiff submits, among other things, the note, mortgage, proof of assignments, the notices provided to defendant, and the relevant trust agreement. Plaintiff also submits the affidavit of Alissa Doepp, a vice-president for loan documentation at Wells Fargo Bank, N.A., successor by merger of Wells Fargo, which establishes that the loan is in default. Doepp further avers that plaintiff has maintained physical possession of the note since April 2012, thereby establishing a basis for its standing to maintain this action separate and apart from plaintiff’s status as an assignee.
The foregoing submissions establish plaintiff’s prima facie entitlement to summary judgment, and the burden therefore shifts to defendant to raise a triable issue of fact with respect to his affirmative defenses and/or counterclaims. In opposition to the motion, defendant submits argument and evidence with respect to three issues: (1) plaintiff’s standing to maintain this action; (2) plaintiff’s alleged commencement of this action in breach of the mortgage and note and the covenant of good faith *1057 and fair dealing implicit therein; and (3) the equitable defense of unclean hands.[4]
Defendant first argues that plaintiff lacks standing to commence this action because the note and mortgage were transferred into the SASCO Trust in violation of the pooling service agreement and/or Estates, Powers and Trusts Law § 7-2.4. This argument is without merit because defendant, “as a mortgagor whose loan [was] owned by a trust, does not have standing to challenge the plaintiff’s possession or status as as-signee of the note and mortgage based on purported noncompliance with certain provisions of the [service agreement]” (Wells Fargo Bank, N.A., 127 AD3d at 1178; see Bank of N.Y. Mellon v Gales, 116 AD3d 723, 725 [2d Dept 2014]; see also Rajamin v Deutsche Bank Natl. Trust Co., 757 F3d 79, 86-88 [2d Cir 2014]). Defendant’s unsupported speculation that the existence of a prior, discontinued foreclosure action against him suggests the existence of irregularities in the chain of title to his loan likewise fails to raise a triable issue of fact. Accordingly, defendant’s affirmative defense alleging that plaintiff lacks standing to maintain this action must be rejected.[5]
Defendant next contends that plaintiff commenced this action under circumstances not permitted by the HUD mortgage servicing regulations (24 CFR part 203), which is said to constitute a breach of the note and mortgage, as well as a failure on plaintiff’s part to comply with a condition precedent to suit. Relatedly, defendant complains that plaintiff failed to properly consider his application for a loan modification under the HAMP regulations, thereby violating the covenant of good faith and fair dealing inherent in the loan documents.
With respect to part 203, the mortgage provides as follows: “In many circumstances, regulations issued by [HUD] will limit [plaintiffs] rights, in the case of payment defaults, to require immediate payment in full and foreclosure if not paid. This *1058 [mortgage] does not authorize acceleration or foreclosure if not permitted by regulations of [HUD] ” (§ 9 [d]).[6]
The federal regulations at issue herein “identify] servicing practices of lending institutions that HUD considers acceptable for mortgages insured by HUD” (24 CFR 203.500). The regulations also establish certain “pre-foreclosure” obligations on the part of a mortgagee:
“Before initiating foreclosure, the mortgagee must ensure that all servicing requirements of [part 203] have been met. The mortgagee may not commence foreclosure . . . unless at least three full monthly installments due under the mortgage are unpaid after application of any partial payments that may have been accepted but not yet applied to the mortgage account. In addition, prior to initiating any action required by law to foreclose the mortgage, the mortgagee shall notify the mortgagor in a format prescribed by the [HUD] Secretary that the mortgagor is in default and the mortgagee intends to foreclose” (24 CFR 203.606 [a]).
Among the pre-foreclosure obligations established by part 203 is a face-to-face meeting: “The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid” (24 CFR 203.604 [b]; see 24 CFR 203.606 [a]). Under the regulations,
“[a] reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.” (24 CFR 203.604 [d].)
According to defendant, plaintiff failed to “have a face-to-face interview with [him], or make a reasonable effort to arrange *1059 such a meeting, before three full monthly installments due on the mortgage [were] unpaid,” in violation of the regulations cited above. Plaintiff responds that its efforts over a multiyear period to negotiate a resolution of the issues raised by defendant’s default more than satisfied its regulatory and contractual obligations. Plaintiff further maintains that it gave adequate and appropriate consideration to each of defendant’s multiple requests for a loan modification.
The court concludes that the proof adduced by plaintiff in support of the motion demonstrates that it made good faith, reasonable efforts over a multiyear period to negotiate a consensual resolution of defendant’s longstanding default before commencing this action. Among other things, plaintiff offered to meet with defendant regarding his default and sent him numerous letters offering him one-on-one assistance with his mortgage issues (Kruse aff, exhibit 6). Plaintiff also considered multiple applications by defendant for a loan modification over a period of several years preceding the commencement of this foreclosure action, although these efforts ultimately did not culminate in a mutually agreeable resolution {id., exhibits 1-5, 7).[7]
Defendant’s vague, conclusory and unsupported allegations in opposition—including the claim that plaintiff acted wrongfully in refusing to accept his offer of a lump-sum down payment of $50,000 in “late 2011” in connection with a prior foreclosure proceeding (McMullin aff ¶¶ 20-22)—are insufficient to raise a triable issue of fact as to plaintiff’s good faith. There simply is no competent proof that plaintiff acted in a manner that had the effect of destroying or injuring defendant’s rights under the loan documents and, in fact, the only competent record proof is to the contrary. Accordingly, the court concludes that defendant’s affirmative defense claiming breach of the implied covenant of good faith and fair dealing and the equitable defense of unclean hands are without merit.[8]
*1060 Despite the considerable efforts made by plaintiff over a multiyear period to address in good faith the issues raised by defendant’s persistent failure to pay his mortgage, the HUD regulations cited by defendant did require plaintiff to “have a face-to-face interview with the [defendant], or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage [were] unpaid” (24 CFR 203.604 [b]), which shall include at least “one trip to see the mortgagor at the mortgaged property” (id. § 203.604 [d]). Defendant argues that plaintiff’s failure to prove that it strictly complied with this specific regulatory provision compels the denial of summary judgment and the dismissal of plaintiff’s complaint.
The mortgage here does not “authorize . . . foreclosure if not permitted by regulations of [HUD] ” (§ 9 [d]). In Green Planet Servicing, LLC v Martin (141 AD3d 892, 893 [2016]), the Appellate Division, Third Department, concluded that similar language within FHA loan documents established a condition precedent to suit (see also HSBC Bank USA, N.A. v Teed, 48 Misc 3d 194 [Steuben County Ct 2014]).[9] Thus, where the defendant’s answer alleges noncompliance with such condition in accordance with the pleading requirement of CPLR 3015 (a), the plaintiff lender has the burden of demonstrating the occurrence of the condition as part of its prima facie case (Green Planet, 141 AD3d at 893). In Green Planet, the Third Department held that the plaintiff lender was not entitled to summary judgment because its moving papers were “wholly devoid of any proof, explanation or argument” regarding plaintiff’s compliance with the face-to-face meeting requirement (id.).
Given the binding force of Green Planet, the court concludes that the loan documents here establish a condition precedent *1061 to suit, the occurrence of which plaintiff must establish as part of its prima facie case. The issue then becomes whether plaintiff has established the occurrence of the condition stated in the mortgage: that the HUD regulations did not prohibit the commencement of this action.
Plaintiff does not claim to have had a face-to-face meeting with defendant before he missed three full mortgage payments in strict compliance with 24 CFR 203.604 (b), and it has not submitted proof that it was excused from doing so because the property “is more than 200 miles from the mortgagee, its ser-vicer, or a branch office of either” (id. § 203.604 [d]). Rather, plaintiff argues that its loss-mitigation efforts over the years constitute substantial compliance with its obligations under part 203, including the face-to-face meeting requirement, and any lack of strict compliance should be excused.
In considering whether the commencement of this action was not permitted by the HUD regulations, the court’s starting point is the text of the regulations themselves. A clear prohibition against the commencement of a foreclosure action is found in the second sentence of 24 CFR 203.606 (a), which unquali-fiedly declares that “[t]he mortgagee may not commence foreclosure for a monetary default unless at least three full monthly installments due under the mortgage are unpaid.” By employing the “ ‘unmistakable language of condition’ ” through “the use of [a] term[ ] such as . . . ‘unless’ ” (MHR Capital Partners LP v Presstek, Inc., 12 NY3d 640, 645 [2009], quoting Oppenheimer, 86 NY2d at 691), this portion of the regulation expressly prohibits a lender from commencing a foreclosure action before three payments are missed.
In contrast, the first sentence of 24 CFR 203.606 (a) imposes a more general duty on FHA lenders “to ensure” that all of the part 203 servicing requirements, including the requirement of a face-to-face meeting, are met prior to foreclosure. This portion of the regulation is not cast in the form of a clear prohibition and, instead, employs the type of “doubtful language” that courts routinely interpret “as embodying a promise” or duty (Oppenheimer, 86 NY2d at 690-691).[10] HUD has directed lenders to comply with their pre-foreclosure duties under part 203 and expressed its intent that lenders so comply before proceed *1062 ing to foreclosure (see 24 CFR 203.500), but the federal agency has not gone so far as to clearly and affirmatively prohibit a lender from commencing a foreclosure action where there has not been full and literal compliance with each and every pre-foreclosure requirement set forth in part 203.
A proper construction of the part 203 regulations also is informed by the simple fact that it is impossible for the plaintiff here to ever come into strict compliance with 24 CFR 203.604. The plain language of the regulation required plaintiff to comply with the face-to-face meeting requirement by May 1, 2009, “before three full monthly installments due on the mortgage [were] unpaid” (24 CFR 203.604 [b]). Almost eight years have passed since that deadline, and defendant has missed another 93 or so payments in the interim. No amount of subsequent loss-mitigation efforts can ever bring plaintiff into strict compliance with 24 CFR 203.604 (a), and the HUD regulations should not be construed to command an impossibility.[11]
The highly inequitable consequences of reading 24 CFR 203.606 (a) as prohibiting a lender from commencing a foreclosure action where there has been any degree of non-compliance with part 203 further counsels against defendant’s position. If this action had been commenced before the borrower had missed three payments, in violation of the clear prohibition of the second sentence of 24 CFR 203.606 (a), the lender would be free to recommence suit after the third payment was missed. Similarly, if this case were dismissed based on the lender’s failure to strictly comply with the conditions precedent established by Real Property Actions and Proceedings Law §§ 1303 and 1304, a new action could be commenced after the required notices were sent.
Here, in contrast, the lender’s inability to come into strict compliance with 24 CFR 203.604 means that the dismissal requested by defendant would effectively be one that is with *1063 prejudice to the commencement of a new action.[12] This would work a substantial forfeiture upon plaintiff, based solely on its failure to have a face-to-face meeting with defendant prior to May 1, 2009. It seems inconceivable that the HUD regulations, promulgated in respect to the federal agency’s role as an insurer of mortgages, were intended to create a permanent and impenetrable barrier to foreclosing on the property of a borrower who has not made a mortgage payment for more than eight years.
Moreover, reading the part 203 regulations to prohibit foreclosure here would not further HUD’s regulatory objectives in any meaningful way. Despite plaintiff’s failure to arrange a face-to-face meeting with defendant before May 1, 2009, the record is replete with proof of numerous meetings and other communications between the lender and the defendant borrower (and/or his counsel) directed at resolving defendant’s long-standing default. Over a nine-year period, both prior to and subsequent to the commencement of this action, plaintiff: (a) engaged in extensive loss-mitigation efforts in connection with a prior foreclosure action, including participation in a settlement conference before the court;[13] (b) appeared at four in-person CPLR 3408 conferences over a six-month period in this action, a process that concluded only after both sides agreed that further settlement efforts would be futile; and (c) participated in an additional round of settlement negotiations following oral argument on the instant motions. All reasonable efforts to resolve defendant’s default have been fully explored over a period of more than nine years, defendant has not been prejudiced by plaintiff’s lack of strict compliance with 24 CFR 203.604, and no legitimate purpose would be served by dismiss *1064 ing this action to allow for an additional “pre-foreclosure” loss-mitigation efforts.
Based upon the text, structure and purpose of the HUD regulations, the court concludes that the first sentence of 24 CFR 203.606 (a), which encompasses the regulatory requirement of a face-to-face meeting before a borrower misses three payments, does not prohibit a lender from commencing a foreclosure action where, as here, the lender has substantially complied with the part 203 regulations prior to commencement, strict compliance with the regulation no longer is possible, and additional loss-mitigation efforts would be futile.
Accordingly, under the particular facts and circumstances of this case, the court concludes that plaintiff has demonstrated the occurrence of the condition specified in the mortgage—that the HUD regulations did not prohibit the commencement of this action—and defendant’s opposition fails to raise a triable issue of fact regarding the same.
Conclusion
Accordingly,[14] it is ordered that plaintiff’s motion for summary judgment is granted in its entirety; and it is further ordered that defendant’s cross motion is denied; and it is further ordered that all of the affirmative defenses and counterclaims contained in defendant Grady McMullin’s answer are dismissed; and it is further ordered that this action to foreclose a mortgage affecting premises known as 40 Mereline Avenue, Albany, New York 12209, be and is hereby referred to James E. Gross, 90 State Street, Suite 700, Albany, New York 12207, to ascertain and compute the amount due to plaintiff for principal and interest on the note and mortgage set forth in the complaint for taxes, assessments, water rates, and/or fire insurance premiums, and late charges, to examine and report whether the premises should be sold in one parcel and that immediately upon the coming in of the report of said Referee, and without further notice, plaintiff may apply for the usual judgment of foreclosure and sale, and for the relief demanded in the complaint besides costs and extra allowances provided by law; and it is further ordered that such Referee shall make the referee’s report to this court with all convenient speed; and it is further ordered that by accepting this appointment the Referee certifies that (s)he is in compliance with part 36 of the *1065 Rules of the Chief Judge (22 NYCRR), including but not limited to, section 36.2 (c) and section 36.2 (d); and it is further ordered that, if required, the Referee appointed herein shall take testimony pursuant to RPAPL 1321; and it is further ordered that the subject mortgage be reformed to include the legal description of the property as requested in the complaint; and it is further ordered that all “John Doe” defendants be deleted from the caption, and the caption so amended to reflect same; and it is further ordered that the caption of this action shall be amended to read as follows:
US BANK NATIONAL ASSOCIATION, as Trustee for SASCO MORTGAGE LOAN TRUST 2006-FR4,
Plaintiff,
v
GRADY MCMULLIN, JR., a/k/a GRADY MCMULLIN; TIFFANY R. COLES; NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE; ALBANY MEDICAL CENTER HOSPITAL; UNITED STATES OF AMERICA - DEPARTMENT OF THE TREASURY - INTERNAL REVENUE SERVICE,
Defendants.
and it is further ordered that a default judgment in favor of plaintiff as to all non-appearing and non-answering defendants shall be granted as to the claims described in the complaint; and it is finally ordered that a copy of this decision and order with notice of entry shall be served upon the owner of equity of redemption, any tenants named in this action and any other party entitled to such notice.

. New York State Department of Taxation and Finance filed a notice of appearance, but waived service of all papers filed prior to entry of judgment. No other defendant has appeared or answered.

. The answer is mislabeled as containing 41 affirmative defenses; it does not contain a “fortieth” affirmative defense.

. Oral argument was held on the cross motions on April 8, 2016. At the conclusion of argument, the parties requested that the court withhold decision on the motions in order to allow them to engage in further settlement efforts. The court recently was advised that a settlement was not reached, and plaintiff requested that the motion be restored to the court’s active calendar.

. Defendant has abandoned his remaining affirmative defenses and counterclaims by failing to raise them in his brief or other filings made in opposition to plaintiff’s motion (see Town of N. Elba v Grimditch, 131 AD3d 150, 159 n 4 [3d Dept 2015], lv denied 26 NY3d 903 [2015]).

. The court will not consider the new challenges to plaintiffs standing made for the first time in defendant’s memorandum of law in reply and sur-reply. The issue of standing squarely was raised in plaintiff’s motion, and defendant was obliged to lay bear his evidence and arguments regarding the same in his opposition papers.

. The note similarly recognizes that HUD regulations may limit the plaintiff’s right “to require immediate repayment in full in the case of payment defaults” and provides that “the Note does not authorize acceleration when not permitted by HUD regulations” (§ 6 [B]).

. In fact, plaintiff offered defendant a stipulated partial reinstatement/ payment agreement in April 2010, which defendant ultimately rejected (Kruse aff, exhibit 4). And defendant’s counsel concedes that, by 2011, defendant did not meet the eligibility criteria for an FHA HAMP loan modification because his arrears were greater than 12 full mortgage payments (Lee aff, Sept. 17, 2015, ¶ 10).

. Insofar as defendant’s counterclaims are premised upon such alleged breaches of contract, his claims for affirmative relief must fail because defendant admittedly is in default of his own obligations under the pertinent *1060 loan documents (see e.g. Harris v Seward Park Hous. Corp., 79 AD3d 425, 426 [1st Dept 2010]; Clearmont Prop., LLC v Eisner, 58 AD3d 1052, 1055 [3d Dept 2009]). In addition, the federal regulations cited by plaintiff do not create a private right of action for damages (see e.g. Davis v Citibank, N.A., 116 AD3d 819, 822 [2d Dept 2014]; see also Kakarala v Wells Fargo Bank, N.A., 2012 WL 1458235, 2012 US Dist LEXIS 58956 [ED AZ, Apr. 27, 2012, No. CV-10-00208-TUC-FRZ]).

. “A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises” (Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 690 [1995] [internal quotation marks and citations omitted]). “Express conditions must be literally performed, whereas constructive conditions, which ordinarily arise from language of promise, are subject to the precept that substantial compliance is sufficient” (id.).

. The judicial preference for construing doubtful language as creating a duty, rather than a condition, is intended to reduce “the risk of forfeiture” where such an outcome is not expressly commanded by the pertinent language (Oppenheimer, 86 NY2d at 691). Forfeiture is discussed infra.

. The face-to-face meeting requirement is not the only pre-foreclosure obligation of part 203 that comes with a strict deadline measured from the date of the borrower’s default (see 24 CFR 203.602 [requires notice of default to be sent to borrower "no later than the end of the second month of any delinquency in payments under the mortgage”]; 24 CFR 203.605 [a] [requires borrower to be evaluated for loss-mitigation “(b)efore four full monthly installments due on the mortgage have become unpaid”]).

. The court recognizes that much of this analysis rests on the premise that, if strict compliance with 24 CFR 203.604 (a) were demanded, it naturally would extend to the requirement that the meeting be arranged “before three full monthly installments due on the mortgage [became] unpaid” (24 CFR 203.604 [b]). It is apparent from the text of the regulation, as well as the sequential structure of part 203, that timing is an integral element of HUD’s regulatory scheme. And if the timing requirement could somehow be ignored and the issue only were whether plaintiff met with defendant prior to commencement, there is no logical reason why the settlement conference and other loss-mitigation efforts conducted in connection with the prior foreclosure action would not represent compliance.

. The electronic records of the Supreme Court Clerk show that a settlement conference in Wells Fargo Bank v McMullin (Sup Ct, Albany County, Aug. 17, 2008, McNamara, J., index No. 1262-08) was held on August 17, 2008 before the Honorable Thomas J. McNamara.

. To the extent not specifically addressed, the parties’ remaining contentions have been considered and found to be either unpersuasive or unnecessary to determine given the decision reached herein.