# Illinois Official Reports

## Appellate Court

---

**PNC Bank, National Ass'n v. Wilson, 2017 IL App (2d) 151189**

---

| | |
|---|---|
| Appellate Court Caption | PNC BANK, NATIONAL ASSOCIATION, Plaintiff-Appellee, v. JEREMY T. WILSON and MICHELLE M. WILSON, Defendants (Jeremy T. Wilson, Defendant-Appellant). |
| District & No. | Second District<br>Docket No. 2-15-1189 |
| Filed | March 2, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-CH-5282; the Hon. Robert G. Gibson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Eryk Folmer, of Law Office of Eryk Folmer, of Chicago, for appellant.<br><br>Jennifer E. Frick and James M. Crowley, of Crowley & Lamb, P.C., of Chicago, for appellee. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Jorgensen and Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant Jeremy T. Wilson appeals from summary judgment rendered against him and in favor of plaintiff, PNC Bank, National Association, in a foreclosure action upon a mortgage loan between the parties. The mortgage is insured by the Federal Housing Administration (FHA), a division of the United States Department of Housing and Urban Development (HUD). Jeremy contends that the trial court erred by rendering summary judgment in PNC Bank's favor because PNC Bank did not comply with federal regulations prior to instituting its foreclosure action. Jeremy argues that the evidence in the record demonstrates the existence of a genuine issue of material fact with respect to his defense that PNC Bank failed to comply with HUD regulations, specifically, title 24, section 203.604, of the Code of Federal Regulations (24 C.F.R. § 203.604 (2014)), which requires a lender, before bringing a foreclosure action against a defaulting borrower, either to have a face-to-face meeting with the borrower or make "a reasonable effort" to arrange a face-to-face meeting. For the following reasons, we affirm.

¶ 2                                   I. BACKGROUND

¶ 3    In June 2003, Jeremy and his wife, Michelle M. Wilson, gave a promissory note to National City Mortgage Company in the amount of $224,467, secured by a mortgage lien on the Wilsons' real property in Du Page County. Subsequently, PNC Bank succeeded to the interest of National City Mortgage Company. The federally insured mortgage loan that is the subject of this cause of action is subject to HUD regulations.

¶ 4    The Wilsons failed to make their monthly payment due on the loan for August 2010. In October 2010, PNC Bank sent the Wilsons a letter establishing the terms of a three-month special forbearance plan. The Wilsons complied with the special forbearance plan, and PNC Bank offered the Wilsons a loan modification to bring their loan current. The parties executed the loan modification agreement on February 10, 2011. On February 28, 2011, the Wilsons filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court, and they did not reaffirm their mortgage. The bankruptcy court discharged the Wilsons' debt to PNC Bank in May 2011.

¶ 5    On October 31, 2012, PNC Bank filed a complaint against the Wilsons for foreclosure, alleging that the Wilsons defaulted on the loan "by failing to pay the monthly installment due May 1, 2012[,] and thereafter." PNC Bank alleged that both Jeremy and Michelle were the mortgagors of the subject property. PNC Bank attached a copy of the mortgage to the complaint.

¶ 6    On September 28, 2013, Jeremy, alone, filed an answer.

¶ 7    On November 18, 2014, the Wilsons moved for summary judgment. In their motion, the Wilsons contended that PNC Bank violated HUD regulations because (1) before PNC Bank filed its foreclosure complaint neither Jeremy nor Michelle "received any written information from [PNC Bank] regarding *** counseling programs *** offered by [HUD] [or] any written information from [PNC Bank] regarding a request to have a face to face interview," and (2) no efforts were "made to arrange such a meeting." The affidavits of Jeremy and Michelle were attached to their motion.

¶ 8        In response, PNC Bank filed a cross-motion for summary judgment, arguing that there was no dispute that it sent a certified letter to the Wilsons and that a PNC Bank agent made a trip to the Wilsons' property and met with Michelle. PNC Bank attached the affidavit of Brian Arthur, PNC Bank's vice president for mortgage services-default, wherein Arthur stated the following. He was familiar with PNC Bank's business, its mode of operation, and the manner in which its records were prepared. Arthur reviewed loan files and was familiar with PNC Bank's corporate history and its records, including the Wilsons' loan file. Arthur stated that PNC Bank sent the Wilsons "a letter by certified mail dated February 2, 2012, stating that PNC, through its agent [J.M. Adjustment Services (JMA)], would schedule a face-to-face meeting at their home to discuss solutions to bring their loan current. A true and correct copy of the February 2, 2012 letter is attached." The attached letter is a computer-generated copy of a letter dated February 2, 2012, addressed to Jeremy at the mortgaged property. In the upper-right corner, the letter provides, in the same font as the entire letter, "Certified Mail/Return Receipt Requested."

¶ 9        PNC Bank also attached the affidavit of Ryan Kojadulian, an employee of JMA, wherein Kojadulian stated the following. Kojadulian reviewed the business records regarding the attempt by one of JMA's agents to arrange a face-to-face meeting with the Wilsons at the mortgaged property. These business records include a "Field Visit Result Summary Sheet" that was saved to JMA's computer, indicating that on February 12, 2012, an attempt was made to have a face-to-face meeting with the Wilsons, and the agent made contact with Michelle and gave her a letter in a blank, sealed, confidential envelope "with the customer's name on it." Further, a copy of that letter was saved to JMA's computer. "[T]rue and correct" copies of the "Field Visit Result Summary Sheet" and the letter were attached to Kojadulian's affidavit. The "Field Visit Result Summary Sheet" contains the Wilsons' names, the mortgaged address, PNC Bank's name, and a number of checked boxes indicating that the agent "Spoke with Customer" and that the "Address [was] Verified by Customer." Under "Additional Comments," it states the following:

> "A visit was made by the agent on 2-12. The agent made contact with the customer, Michelle, at the time of the visit. The agent left the blank sealed confidential envelope with the customer's name on it containing the letter to the customer and she declined to use the agent's cell phone to contact the lender right then. *** Michelle advised that she would be sure to contact the lender."

The letter is on PNC Bank's letterhead, is dated February 12, 2012, and is addressed to Jeremy and Michelle at the mortgaged property. The letter states as follows:

> "Please contact PNC Mortgage at 1-(800) *** between the hours listed below.
>
> Please call PNC Mortgage during the hours listed below:
>
> Monday - Friday                    8:00AM - 9:00PM (EST)
> Saturday                           8:00AM - 2:00PM (EST)
>
> It is important for you to respond to this letter immediately.
> Sincerely,
> PNC Mortgage."

¶ 10       On June 2, 2015, Jeremy, alone, filed a reply in support of his motion for summary judgment and response in opposition to PNC Bank's cross-motion for summary judgment.

¶ 11      On July 21, 2015, the trial court granted summary judgment in favor of PNC Bank and denied the Wilsons' motion. On October 27, 2015, the property was sold at a judicial sale to PNC Bank. On November 10, 2015, the trial court granted PNC Bank's motion for an order approving the sale of the property. Jeremy filed his notice of appeal on December 7, 2015.

¶ 12      After oral argument, this court ordered additional briefing regarding the effect of the Wilsons' discharge in bankruptcy without reaffirming the PNC Bank loan debt.

¶ 13                                         II. ANALYSIS

¶ 14      Jeremy argues that PNC Bank did not comply with federal regulations, namely, title 24, sections 203.604(b) and (d), of the Code of Federal Regulations (24 C.F.R. § 203.604(b), (d) (2014)), prior to instituting its foreclosure action.

¶ 15      As our statement of facts indicates, this case was decided in the context of cross-motions for summary judgment. When parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. However, the filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate a court to render summary judgment. *Id.*

¶ 16      Summary judgment motions are governed by section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2014)). Pursuant to section 2-1005 of the Code, summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Seymour v. Collins*, 2015 IL 118432, ¶ 42. Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. *Pielet*, 2012 IL 112064, ¶ 53. On a motion for summary judgment, the trial court must construe the record strictly against the movant and liberally in favor of the nonmoving party. *Seymour*, 2015 IL 118432, ¶ 42.

¶ 17      Where an order granting summary judgment is before us on appeal, our review is *de novo*. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). *De novo* review is also appropriate to the extent that this case turns on construction of HUD regulations and thus presents a question of law. See *Better Government Ass'n v. Zaruba*, 2014 IL App (2d) 140071, ¶ 20.

¶ 18      Initially, we note that it is undisputed here that the failure to comply with HUD's mortgage services requirements contained in its regulations is a defense to a mortgage foreclosure action. See *Bankers Life Co. v. Denton*, 120 Ill. App. 3d 576, 579 (1983). The legislative purpose of the National Housing Act (Act) (12 U.S.C. § 1701t (2012)) is to assist in providing a decent home and a suitable living environment for every American family. The primary beneficiaries of the Act and its implementing regulations are those receiving assistance through the Act's various housing programs, including HUD-insured mortgages. *Denton*, 120 Ill. App. 3d at 579. Because these government-insured mortgage programs recognize that mortgagors will often have difficulty making full and timely payments, HUD promulgated very specific regulations outlining the mortgage servicing responsibilities of mortgagees. *Federal National Mortgage*

*Ass'n v. Moore*, 609 F. Supp. 194, 196 (N.D. Ill. 1985). Thus, title 24, section 203.500, of the Code of Federal Regulations, entitled "Mortgage servicing generally," states:

> "It is the intent of [HUD] that no mortgagee shall commence foreclosure or acquire title to a property until the requirements of this subpart have been followed." 24 C.F.R. § 203.500 (2014).

¶ 19 One of these requirements provides that the mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments are unpaid. 24 C.F.R. § 203.604(b) (2014). A reasonable effort is defined as sending a minimum of one certified letter to the mortgagor and making at least one trip to see the mortgagor at the mortgaged property. 24 C.F.R. § 203.604(d) (2014). Section 203.604 provides, in part:

> "(b) The mortgagee must have a face-to-face interview with the mortgagor, *or* make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. ***
>
> * * *
>
> (d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor *certified by the Postal Service* as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting *shall also include at least one trip to see the mortgagor* at the mortgaged property ***." (Emphases added.) 24 C.F.R. § 203.604 (2014).

¶ 20 The parties agree that PNC Bank did not have a face-to-face meeting with the Wilsons and that, therefore, PNC Bank was required to make a reasonable effort to arrange such a meeting. Jeremy argues that PNC Bank did not make a reasonable effort to arrange a face-to-face meeting as required by section 203.604(d), because there is no "proper evidence" of a letter being certified by "the Postal Service."

¶ 21 In their affidavits, Jeremy and Michelle stated that they never received a letter from PNC Bank attempting to arrange a face-to-face meeting. In response, PNC Bank relied on exhibits attached to their cross-motion for summary judgment consisting of (1) the affidavit of Arthur, stating that he was familiar with the business records and practices of PNC Bank regarding letters requesting face-to-face meetings with customers who are in default and that PNC Bank sent a certified letter to the Wilsons stating that "PNC, through its agent [JMA], would schedule a face-to-face meeting at their home to discuss solutions to bring their loan current" and (2) a purported computer-generated copy of PNC Bank's letter, dated February 2, 2012, marked "Certified Mail/Return Receipt Requested," offering the Wilsons a face-to-face meeting "to discuss ways to cure your delinquency." Jeremy replies that PNC Bank failed to establish that the purported letter was "certified by the Postal Service as having been dispatched," as expressly required by section 203.604(d), because (1) PNC Bank presented nothing from the "Postal Service" and (2) Arthur's affidavit is inadequate given that he had no personal knowledge of the purported letter having been sent or certified by the postal service as having been sent.

¶ 22 In order to determine whether summary judgment was proper in this case, we must interpret the phrase "shall consist at the minimum of one letter sent to the mortgagor *certified by the Postal Service as having been dispatched.*" (Emphasis added.) 24 C.F.R. § 203.604(d) (2014). We interpret a regulation in the same manner that we would interpret a statute. *Better*

*Government Ass'n*, 2014 IL App (2d) 140071, ¶ 20. Our primary goal is to give effect to the drafter's intent, and the best indicator of that intent is the language of the regulation, given its plain and ordinary meaning. *Id.*

¶ 23 Here, the plain and ordinary meaning of section 203.604(d) requires proof from the United States Postal Service that the letter was sent. See *RBS Citizens, NA v. Sharp*, 2015-Ohio-5438, 47 N.E.3d 170, at ¶ 20 (holding that "the 'minimum' effort necessary to comply with C.F.R. § 203.604(d) requires that the letter be sent to the mortgagor by certified mail"). In addition, we take judicial notice that the United States Postal Service (USPS) provides proof of mailing in the form of a "certificate" for the cost of $1.30.[1]

¶ 24 Although the regulation requires proof from the postal service that the letter was "certified as having been dispatched," and PNC Bank failed to provide this proof, we determine that its failure to do so did not bar it from foreclosing on the subject property under the facts of this case. Where a mortgagor alleges only a technical defect in notice and fails to allege any resulting prejudice, vacating the foreclosure to permit new notice would be futile. See *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶ 27. PNC Bank failed to proffer any proof from the USPS of the dispatch of the letter in question pursuant to the federal regulation at issue; however, we affirm the trial court's judgment for the following reasons. See *Burton v. Airborne Express, Inc.*, 367 Ill. App. 3d 1026, 1033 (2006) ("this court may affirm the circuit court's dismissal for any reason appearing in the record").

¶ 25 The record reflects that the Wilsons' debts were discharged in bankruptcy in May 2011. Eight months later, PNC Bank allegedly sent the letter required by federal regulations for a face-to-face meeting. However, the requirement of a face-to-face meeting contemplates that there is a contract between the parties that could be remediated or ameliorated. Because the Wilsons did not reaffirm the debt, there was no contract to remediate or ameliorate. Sending the letter seeking a face-to-face meeting would be meaningless and futile. Futile acts are usually excused, especially when the equities lie in that direction. A proceeding to foreclose a mortgage is a proceeding in equity. *Federal National Mortgage Ass'n v. Bryant*, 62 Ill. App. 3d 25, 27 (1978). Under long-standing equitable principles, a party seeking to invoke the aid of a court of equity must do equity. *Id.*

¶ 26 The Wilsons' discharge in bankruptcy without reaffirmation means that they are no longer bound by the mortgage contract between the parties and should not be allowed to enjoy any benefits of the mortgage contract that their own volitional act has nullified. The defenses raised by Jeremy are based upon PNC Bank's failure to complete an exercise in futility. To send

---

[1]"Certificate of Mailing

Have evidence that you [sent] the item when you say you did. This official record shows the date your mail was presented to USPS for mailing.

Notes

    Only available at your Post Office.

    Available only at the time of mailing.

    Don't lose your certificate. The Postal Service® does not keep a copy.

    Use Form 3817 or Form 3877 only.

Cost

$1.30 (Form 3817)." United States Postal Service, https://www.usps.com/ship/insurance-extra-services.htm? (last visited Jan. 31, 2017).

notice in order to remediate or ameliorate a mortgage contract when the contract has been nullified by the act of the debtor is futile and meaningless. Moreover, if we permitted Jeremy's argument to prevail, we would be allowing a regulation designed as a shield to be used as a sword. The law does not require futile acts as prerequisites to the filing of legal proceedings. "[A] demand is not necessary where the circumstances indicate its futility. [Citations.] In order to excuse the requirement of a demand for the surrender of property, the evidence must show the demand would have been unavailing." *First Illini Bank v. Wittek Industries, Inc.*, 261 Ill. App. 3d 969, 970-71 (1994). In addition, "where it appears that a demand would have been of no avail, then none is required, for the law never requires the doing of a useless thing." *Carroll v. Curry*, 392 Ill. App. 3d 511, 515 (2009). Further, the alleged failure did not prejudice Jeremy's ability to ameliorate a mortgage contract that he nullified by his voluntary act of discharge in bankruptcy without reaffirmation. Thus, although the regulation at issue requires proof of mailing, in this particular case, this defense is unavailing as the discharge without reaffirmation would have rendered PNC Bank's efforts futile. There is neither purpose nor policy that would countenance a determination of prejudicial error.

¶ 27    Jeremy presents an additional basis for reversal. Jeremy argues that summary judgment in PNC Bank's favor was improper because a genuine issue of material fact exists regarding whether PNC Bank complied with the timeframe requirements contained in title 24, section 203.604(b), of the Code of Federal Regulations. This section provides in relevant part:

> "[H]ave a face-to-face interview with the mortgagor, *or* make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced ***." (Emphasis added.) 24 C.F.R. § 203.604(b) (2014).

Jeremy argues that there is a genuine issue of material fact regarding whether PNC Bank complied with this section because several potential default dates can be gleaned from the record.

¶ 28    PNC Bank responds that Jeremy forfeited this argument because he failed to present it to the trial court in his motion for summary judgment and related briefing. Jeremy counters that he raised the issue of timeliness in his motion for summary judgment.

¶ 29    An alleged error is not preserved for review if the trial court fails to rule upon it. *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 946 (1993). The record reveals that the Wilsons raised the issue of timeliness in their motion for summary judgment. However, Jeremy failed to raise this argument during the hearing on the parties' motions, and the trial court made no ruling on this issue. Accordingly, Jeremy has forfeited the issue. See *King v. Paul J. Krez Co.*, 323 Ill. App. 3d 532, 534 (2001) (finding one of the defendant's bases for summary judgment was forfeited based upon the rule that "[a]n alleged error is not preserved for review if the trial court fails to rule upon it").

¶ 30                                    III. CONCLUSION

¶ 31    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 32          Affirmed.