# Illinois Official Reports

## Appellate Court

---

### *U.S. Bank Trust National Ass'n v. Hernandez*, 2017 IL App (2d) 160850

---

| | |
|---|---|
| Appellate Court Caption | U.S. BANK TRUST NATIONAL ASSOCIATION, as Owner Trustee for Queen's Park Oval Asset Holding Trust, Plaintiff-Appellee, v. JOSE HERNANDEZ and MARIA HERNANDEZ, Defendants-Appellants. |
| District & No. | Second District<br>Docket No. 2-16-0850 |
| Filed | October 12, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 14-CH-3; the Hon. Luis A. Berrones, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Daniel S. Khwaja, of Chicago, for appellants.<br><br>Louis J. Manetti, Jr., of Codilis & Associates, P.C., of Burr Ridge, for appellee. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson concurred in the judgment and opinion.<br>Justice Schostok specially concurred, with opinion. |

**OPINION**

¶ 1    Defendants, Jose Hernandez and Maria Hernandez, appeal the summary judgment entered in favor of plaintiff, U.S. Bank Trust National Association, on its complaint to foreclose a mortgage. Defendants argue that material questions of fact exist on two issues: (1) whether plaintiff lacked standing to foreclose on the mortgage and (2) whether plaintiff complied with a federal regulation, specifically Title 24, section 203.604, of the Code of Federal Regulations (Code) (24 C.F.R. § 203.604 (2014)), prior to initiating the foreclosure proceeding. We hold that plaintiff's standing was established as a matter of law but that material questions of fact remain on whether plaintiff complied with section 203.604. Therefore, we vacate the summary judgment and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3    On January 2, 2014, plaintiff filed its complaint to foreclose a mortgage on property owned by defendants. Plaintiff identified the original mortgagee as "Mortgage Electronic Registration Systems, Inc. as Nominee for Franklin American Mortgage Company." Plaintiff attached a copy of the subject mortgage, dated June 9, 2008. In support of its claim to be the current mortgagee, plaintiff attached a copy of a note, also dated June 9, 2008 (the Note). The Note bore two indorsements. The first was an indorsement from Franklin American Mortgage Company to Countrywide Bank, FSB (Countrywide). The second was a blank indorsement from Countrywide, signed by its senior vice-president, Laurie Meder. Neither indorsement was dated.

¶ 4    After the trial court struck without prejudice defendants' initial affirmative defenses, defendants refiled their answer and affirmative defenses. Their first affirmative defense was that plaintiff lacked standing because the indorsements on the Note were inadequate to show that plaintiff held the debt when it filed its complaint. Their second defense was that plaintiff failed to comply with section 203.604, which required plaintiff to have, or reasonably attempt to have, a face-to-face meeting with defendants before seeking foreclosure. *Id.*

¶ 5    In February 2016, plaintiff moved for summary judgment, attaching several documents that bear on the issues in this appeal. First, plaintiff attached several affidavits from Kacy Prather, who identified herself as a foreclosure supervisor with Roundpoint Mortgage Servicing Corporation (Roundpoint). The affidavits were all dated in 2015. According to Prather, Roundpoint was "currently servic[ing] [defendants'] loan on behalf of Plaintiff" and had "acquired the servicing rights for [the] loan on 09/16/13 from Bank of America N.A." Prather averred that, in April 2012, plaintiff's agents "visited the subject property" in an attempt to have a face-to-face meeting with defendants. Prather also attached a copy of an April 2012 letter addressed to defendants at the subject property. The sender was Titanium Solutions (Titanium), identifying itself as the mortgage servicer for Bank of America, N.A. The letter advised defendants that a representative from Titanium would attempt to visit defendants regarding their loan. Prather attached what she claimed was "a copy of the FedEx Label for the package in which the letter was sent." The label, which was computer-generated, showed a "ship date" of April 20, 2012, included a tracking number, and bore the instruction, "LEAVE AT ADDRESS. DON'T RETURN."

¶ 6    In addition to Prather's affidavits, plaintiff attached copies of two assignments of the subject mortgage. The first was an August 15, 2013, assignment from "Bank of America N.A.,

successor by merger to BAC Home Loans Servicing, LP FKA Countrywide Home Loans Servicing, LP" to the Secretary of Housing and Urban Development (HUD). The assignment specified that it included "the Note or Notes *** described" in the subject mortgage. The second assignment was a January 16, 2014, assignment from HUD to plaintiff. This assignment did not reference any underlying debt.

¶ 7    Defendants filed a response, contending that the August 2013 assignment to HUD raised an issue of material fact whether plaintiff owned the debt on January 2, 2014, when it filed its complaint. Defendants also claimed that the January 16, 2014, assignment was immaterial to whether plaintiff owned the debt at an earlier date.

¶ 8    Defendants further asserted that a triable question of fact existed as to plaintiff's compliance with section 203.604(d) because, according to Prather, plaintiff's April 2012 letter was sent by Federal Express when section 203.604(d) expressly provides that the letter offering a face-to-face meeting should be sent through the United States Postal Service. See 24 C.F.R. § 203.604(d) (2014) ("A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched."). Defendants attached an affidavit from defendant Maria Hernandez (Maria), who asserted in relevant part:

> "10. I have never received a certified letter by mail from Plaintiff, U.S. Bank Trust National Association, the purported previous note holder, Bank of America, N.A.; one of their servicers, or affiliates, for notice of available counseling, or been offered a face-to-face meeting at either the Plaintiff's or the previous lender's local banks, or other H.U.D. related servicing office."

¶ 9    The trial court granted summary judgment for plaintiff and entered a judgment of foreclosure and sale. Defendants filed a motion to reconsider, to which they attached a document from the Federal Deposit Insurance Corporation indicating that Countrywide was inactive as of April 27, 2009, having merged on that date into Bank of America. Defendants concluded that the blank indorsement by Countrywide could have been executed no later than April 2009 and was, accordingly, "mooted" by the later August 2013 assignment from Bank of America to HUD. The trial court denied the motion to reconsider.

¶ 10    Subsequently, plaintiff purchased the subject property at a judicial sale and moved the court to approve the sale. Defendants filed an objection. They attached documentation showing that the August 2013 assignment of the subject mortgage from Bank of America to HUD was recorded on January 23, 2014, several days after plaintiff instituted this foreclosure proceeding. The trial court rejected defendants' arguments and entered an order confirming the sale.

¶ 11    Defendants filed this timely appeal.

¶ 12                                   II. ANALYSIS
¶ 13                              A. General Principles
¶ 14    Defendants claim that the trial court erred by entering summary judgment in favor of plaintiff. Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). Thus, the purpose of summary judgment is not to try a question of

fact but rather to determine whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). In determining whether such a question exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Id.* at 43. "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* Summary judgment is appropriate only where the right of the movant is clear and free from doubt. *Id.* Our review of a summary judgment ruling is *de novo*. *Id.*

¶ 15                                        B. Standing

¶ 16        Defendants claim that a material question of fact exists as to whether plaintiff had standing to foreclose on the mortgage. We disagree.

¶ 17        "The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 262 (2004). A party's standing must be determined as of the time the suit is brought. *Deutsche Bank National Trust Co. v. Gilbert*, 2012 IL App (2d) 120164, ¶ 15. Lack of standing is an affirmative defense that the defendant must plead and prove. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010).

¶ 18        Plaintiff's claim of authority to foreclose on the subject mortgage was based on its possession of the Note with its blank indorsement. A note indorsed in blank is payable to the bearer. See 810 ILCS 5/3-205(b) (West 2014) ("When indorsed in blank, an instrument becomes payable to the bearer and may be negotiated by transfer of possession alone until specially indorsed."). A transfer of a note constitutes an assignment of the mortgage securing the debt, and thus the bearer of the note is deemed the mortgagee, authorized to bring foreclosure proceedings. *US Bank, National Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 35; *Federal National Mortgage Ass'n v. Kuipers*, 314 Ill. App. 3d 631, 635 (2000); see 735 ILCS 5/15-1208 (West 2014) (defining "mortgagee" as "(i) the holder of an indebtedness or obligee of a non-monetary obligation secured by a mortgage or any person designated or authorized to act on behalf of such holder and (ii) any person claiming through a mortgagee as successor"). Plaintiff's possession of the Note, indorsed in blank, was sufficient to establish standing absent a contrary showing. See *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 30 ("In a foreclosure action, attaching the note to the complaint is *prima facie* evidence that the plaintiff owns the note."); *Lipscomb v. Sisters of St. Francis Health Services, Inc.*, 343 Ill. App. 3d 1036, 1041 (2003) (a *prima facie* case is sufficient to establish a point in the absence of contrary evidence (citing *Lehman v. Stephens*, 148 Ill. App. 3d 538, 551 (1986))).

¶ 19        Defendants suggest that plaintiff's attachment of a mere copy of the Note was inadequate to create a *prima facie* case. They cite no authority here, which is no surprise since well-established law holds to the contrary. See *Bayview Loan Servicing, LLC v. Cornejo*, 2015 IL App (3d) 140412, ¶ 12 ("The attachment of a copy of the note to a foreclosure complaint is *prima facie* evidence that the plaintiff owns the note."); *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 26 ("For over 25 years, the [Illinois Mortgage] Foreclosure Law [(735 ILCS 5/15-1101 *et seq.* (West 2010))] has been interpreted as not requiring plaintiffs' production of the original note, nor any specific documentation demonstrating that it owns the note or the right to foreclose on the mortgage, other than the copy of the mortgage and note

- 4 -

attached to the complaint." (Emphasis omitted.)); *First Federal Savings & Loan Ass'n of Chicago v. Chicago Title & Trust Co.*, 155 Ill. App. 3d 664, 665-67 (1987).

¶ 20    Defendants also claim that plaintiff's own documentary support for summary judgment undercut its showing of standing. Defendants point specifically to the August 15, 2013, assignment of the subject mortgage from Bank of America to HUD. According to defendants, this assignment raises a triable question of fact whether the subject mortgage was held by HUD when plaintiff filed this action several months later in January 2014. Defendants suggest that the recording of the August 2013 assignment on January 23, 2014, after the complaint was filed, makes it even more likely that HUD, not plaintiff, owned the debt when the suit was brought. As for the January 16, 2014, assignment of the subject mortgage from HUD to plaintiff, defendants claim that it is "inconsequential" to whether plaintiff possessed the subject debt when it filed its complaint several days before. Defendants also assert that the January 2014 assignment could not have transferred the subject debt in any case since it did not reference that debt.

¶ 21    Plaintiff counters defendants' position on the August 2013 assignment by pointing to Prather's statement in her 2015 affidavits that Roundpoint had "acquired the servicing rights for [defendants'] loan on 09/16/13 from Bank of America N.A." Plaintiff asks us to construe this remark as meaning that plaintiff "had an interest in the loan before it filed [its action]." The difficulty is that Prather did not specify for which entity Roundpoint began servicing the loan in September 2013. Her affidavits simply do not indicate when, prior to May 19, 2015 (the date of her earliest affidavit), plaintiff obtained the Note.

¶ 22    Irrespective of Prather's affidavits, however, plaintiff's standing was established as a matter of law. Defendants dismiss the blank indorsement on the Note as a "snapshot in time of a much earlier date, one that preceded the assignment of the [N]ote to [HUD]." Defendants fail to appreciate the force of the blank indorsement. The presumption of ownership conferred by the indorsement meant that plaintiff could sue on the Note without setting forth its history. Defendants, rather, had the burden of providing as much of that history as necessary to demonstrate that "the transfer [of the Note] did not occur before the complaint was filed." *Cornejo*, 2015 IL App (3d) 140412, ¶ 13. Defendants "could have, through depositions or interrogatories, definitively shown when plaintiff obtained an interest in the mortgage." *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 25. Like the defendant in *Rosestone*, defendants did not make this effort below. Instead, they pointed, and continue to point on appeal, simply to another "snapshot in time," the August 15, 2013, assignment. Assuming *arguendo* that the August 15, 2013, assignment conveyed the subject debt to HUD, it simply did not rebut the possibility that plaintiff became the owner of that debt sometime between August 15, 2013, and January 2, 2014 (the date that plaintiff filed its complaint), whether from HUD or another entity in the chain of ownership. Even the recording of the August 2013 assignment as late as January 23, 2014, did not rebut plaintiff's ownership of the debt on January 2.

¶ 23    As for the January 16, 2014, assignment from HUD to plaintiff, we agree with plaintiff that it is plausibly explained as a memorialization of a prior transfer of the Note to plaintiff. See *id.* ("Even when a written assignment exists, it may be a mere memorialization of an earlier transfer of interest.").

¶ 24    Defendants cite Title 24, section 203.351, of the Code (24 C.F.R. § 203.351 (2014)), which prescribes what must be contained in an application for federal mortgage insurance when a

mortgage is assigned to HUD. Defendants' reason for citing it is obscure; they appear to suggest that the provision explains why the subject mortgage was assigned to HUD. Our concern is not why the August 2013 assignment was made but whether it raises an issue of material fact regarding standing. As explained, the assignment did not rebut plaintiff's *prima facie* case that it owned the debt on January 2, 2014, as evidenced by its possession of the Note indorsed in blank.

¶ 25     For these reasons, we hold that defendants failed to rebut plaintiff's *prima facie* case of standing. As plaintiff established as a matter of law that it had standing, summary judgment on that issue was proper.

¶ 26                                    C. Compliance With Section 203.604

¶ 27     Defendants' second contention on appeal is that summary judgment was inappropriate on the issue of plaintiff's compliance with section 203.604 of the Code.

¶ 28     As defendants' mortgage was insured by HUD, it was subject to specific servicing requirements. See 24 C.F.R. § 203.500 (2014); *Federal National Mortgage Ass'n v. Moore*, 609 F. Supp. 194, 196 (N.D. Ill. 1985). The failure to comply with HUD's servicing requirements is a defense to a mortgage-foreclosure action. *PNC Bank, National Ass'n v. Wilson*, 2017 IL App (2d) 151189, ¶ 18.

¶ 29     Section 203.604(b) requires that "[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid." 24 C.F.R. § 203.604(b) (2014). "A reasonable effort to arrange a face-to-face meeting with the mortgagor" has two elements. 24 C.F.R. § 203.604(d) (2014). First, it "shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched." *Id.* Second, it "shall also include at least one trip to see the mortgagor at the mortgaged property." *Id.* A mortgagor may not institute foreclosure proceedings before complying with section 203.604. See 24 C.F.R. § 203.500 (2014).

¶ 30     We note initially that, in the midst of their argument on the "attempt-by-letter" requirement, defendants make the passing remark that "no visit to the property was ever conducted." Prather claimed otherwise in her affidavit. As defendants do not acknowledge her statement or cite any other part of the record to support their point, we reject it as forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016) (failure to provide supporting record citations results in forfeiture of a point).

¶ 31     The gravamen of defendants' challenge is that plaintiff failed to satisfy the requirement that it attempt by letter to arrange a face-to-face meeting. According to defendants, plaintiff's use of Federal Express, as evidenced by a shipping label that plaintiff produced from the carrier, was inadequate because section 203.604(d) specifies that the letter must be sent by the United States Postal Service. Plaintiff cites *Rourk v. Bank of America National Ass'n*, No. 4:12-CV-42 (CDL), 2013 WL 5595964, at *5 (M.D. Ga. Oct. 11, 2013), where the foreclosure plaintiff sent the letter "via Federal Express with delivery confirmation." The trial court held that, while this delivery method did not "strictly comply with the certified mail requirement, it [did] substantially comply with the requirement that the letter be certified as having been dispatched." *Id.*

- 6 -

¶ 32    We do not decide whether the use of a private carrier can constitute substantial compliance with the "attempt-by-letter" requirement of section 203.604(d), for even if we construed the section in plaintiff's favor, we would hold that plaintiff failed to comply with its requirements. Plaintiff concedes that even substantial compliance with section 203.604(d) would entail proof from the carrier that the letter was "dispatched" (24 C.F.R. § 203.604(d) (2014)) or sent. See *Wilson*, 2017 IL App (2d) 151189, ¶ 23 ("[T]he plain and ordinary meaning of section 203.604(d) requires proof from the United States Postal Service that the letter was sent."). Here, a material question of fact remains on whether plaintiff's letter offering a face-to-face meeting was dispatched. Plaintiff claims that the "unique tracking identifier" on the Federal Express label is "proof that the letter was sent." We disagree. The label is not indubitable proof of dispatch. We take judicial notice of the procedures for shipping packages with Federal Express. See *id.* (taking judicial notice of the Postal Service's shipping options). The label submitted by plaintiff was computer-generated. Federal Express's website permits a user to generate labels for shipment. The user selects the ship date, and a tracking number is assigned. See *FedEx Ship Manager® Software User Guide*, FedEx 25-28, http://images.fedex.com/us/software/pdf/FSM_UserGuide_v3000.pdf (last visited Sept. 14, 2017) (user manual describing process of creating a label); *Shipping Services and Online Shipping Tools*, FedEx, https://www.fedex.com/us/shipping (last visited Sept. 14, 2017) (video describing process of creating a label); *Tracking Your Shipping Business*, FedEx, http://www.fedex.com/us/smallbusiness/articles/trackingshippingbusiness.html (last visited Sept. 14, 2017) ("A tracking number is a numeric code assigned to every package in the shipping system; it uniquely identifies each package as it moves through the shipping channels. It is assigned when transport is arranged—the tracking number appears on the shipper's forms if you use paper-based method, or is assigned automatically if you arrange for shipment online."). The user might or might not actually ship the item after generating the label. *FAQs for FedEx Ship Manager Software*, FedEx, http://www.fedex.com/us/ship-manager/software/resources/faq.html (last visited Sept. 14, 2017) (noting that a shipping label can be generated up to 10 days in advance of shipment). In short, a shipping label—complete with shipping date and tracking number—can be generated independently of actual shipment. See *Geathers v. Bank of America, N.A.*, No. 1:14-cv-00850-WSD-AJB, 2015 WL 5089347, at *7 (S.D. Ga. July 6, 2015) (Federal Express shipping label, with "no tracking information or other documentation showing that the package was actually dispatched or delivered," did not satisfy the letter requirement of section 203.604(b)). Notably, Federal Express offers proof of delivery (*FedEx® Tracking*, FedEx, https://www.fedex.com/apps/fedextrack/?action=spod&cntry_code=cv (last visited Sept. 14, 2017)), which the plaintiff in *Rourk* submitted. Plaintiff offered no such proof here. A movant's entitlement to summary judgment must be free and clear from doubt. *Adams*, 211 Ill. 2d at 43. The shipping label does not demonstrate conclusively that plaintiff sent defendants a letter offering a face-to-face meeting.

¶ 33    We stress that we do not hold today that the use of a private carrier can never satisfy section 203.604(d). We do not reach that issue because, as plaintiff concedes, proof of dispatch would be required in any case, and we determine here that plaintiff failed to establish as a matter of law that it dispatched the letter.

¶ 34    Plaintiff alternatively argues lack of prejudice. First, as plaintiff reads Maria's affidavit, she asserted only that defendants received no letter from the *Postal Service* offering a

face-to-face meeting, not that they received no such letter at all. We disagree. Maria did specifically deny that defendants received a letter by certified mail from the Postal Service, but at the end of the same sentence she also generally denied being "offered a face-to-face meeting at either the Plaintiff's or the previous lender's local banks, or other H.U.D. related servicing office." Construing Maria's affidavit in the light most favorable to defendants, as we must, we read her as denying that she received any letter offering defendants a face-to-face meeting.

¶ 35　　Second, plaintiff asserts that defendants' history of delinquency on their mortgage payments suggests that they could not have avoided foreclosure even if offered a face-to-face meeting. Plaintiff's only authority for this contention is *Wilson*, where this court held that the offer of a face-to-face meeting pursuant to section 203.604 would have been futile because the debt was discharged in bankruptcy, and hence "there was no contract to remediate or ameliorate." *Wilson*, 2017 IL App (2d) 151189, ¶ 25. In so holding, this court articulated the general principle that "[w]here a mortgagor alleges only a technical defect in notice and fails to allege any resulting prejudice, vacating the foreclosure to permit new notice would be futile." *Id.* ¶ 24. The case from which *Wilson* derived this proposition, *Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶ 27, interpreted an Illinois statute on notice in foreclosure proceedings (735 ILCS 5/15-1502.5 (West 2010)).

¶ 36　　*Wilson* grafted the no-prejudice principle, a creature of Illinois state law (as far as *Pajor* indicates), onto a federal regulation. In the absence of direction from the federal courts, to which plaintiff does not refer us, we decline to extend the principle to a situation so unlike that of *Wilson* and to hold that noncompliance with section 203.604 may be excused in cases of inevitable foreclosure (however that may be determined). Accordingly, we reject plaintiff's contention.

¶ 37　　We conclude that summary judgment was improper because plaintiff did not establish as a matter of law that it complied with section 203.604(d).

¶ 38　　　　　　　　　　　　III. CONCLUSION

¶ 39　　For the foregoing reasons, we vacate the summary judgment and judgment of foreclosure and sale, and we remand this case for further proceedings.

¶ 40　　Vacated and remanded.

¶ 41　　JUSTICE SCHOSTOK, specially concurring.

¶ 42　　I write separately due to concerns over judicial economy that are created by situations such as present in this case. The plaintiff relies on *Rourk* for the proposition that the use of Federal Express was sufficient to comply with the requirements of section 203.604(d) of the Code. However, *Rourk* suggested that Federal Express was a substitute for the United States Postal Service only upon proof of receipt. *Rourk*, 2013 WL 5595964, at *5. Here, the plaintiff provided neither proof of dispatch nor proof of receipt. The present situation, and the needlessly extended proceedings on remand, could clearly have been avoided had the plaintiff simply provided an affidavit stating that the letter required by section 203.604(d) had been sent or some other proof of dispatch. Because the plaintiff failed to do so, we are required to remand for further proceedings.