DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LAKEVIEW LOAN SERVICING, LLC,**
Appellant,

v.

**SANTIA LASHAWN WALCOTT-BARR** and **MARK LIVINGSTON BARR,**
Appellees.

No. 4D19-1582

[October 14, 2020]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Frank D. Ledee, Judge; L.T. Case No. CACE17-016601.

Paul J. McCord of Deluca Law Group, PLLC, Fort Lauderdale, for appellant.

Malcolm E. Harrison and Michelle Moore, Wellington, for appellees.

KUNTZ, J.

Lakeview Loan Servicing, LLC appeals the circuit court's involuntary dismissal of its foreclosure complaint against the Borrowers, Santia Lashawn Walcott-Barr and Mark Livingston Barr. The circuit court found Lakeview violated the requirements of a United States Department of Housing and Urban Development regulation, 24 C.F.R. § 203.604(d) (2019), because it failed to introduce evidence from the United States Postal Service as proof of compliance. We reverse the circuit court's involuntary dismissal.

### *Background*

Lakeview filed a foreclosure complaint alleging the Borrowers owed $318,685.56 plus interest on a note and mortgage. The Borrowers answered the complaint, asserting seven affirmative defenses including Lakeview's failure to comply with 24 C.F.R. § 203.604.

At trial, a loan litigation resolution specialist with Loan Care, LLC, Lakeview's servicing agent, testified that she managed Loan Care's foreclosure litigation and reviewed business records for trials, depositions,

and settlements. The specialist explained that Loan Care used a third-party vendor, NCP Solutions, to mail out its letters. Although she never worked for NCP, she was trained in NCP's procedures. NCP sent a data file to Loan Care for approval, and once Loan Care's "letter librarian" approved the letter, NCP proofed it, printed it, and mailed it. Once mailed, NCP scanned and saved the letter into a database housing all of Loan Care's letters. The Loan Care specialist testified that all letters were "scanned with mail codes." She also had personally visited the USPS facility where NCP took its letters for mailing.

Relevant to this case, the Loan Care specialist identified the letter requesting a face-to-face meeting that was sent to the Borrowers by certified mail. The letter was admitted as an exhibit without objection. The Loan Care specialist testified that the letter was "the letter typically sent on FHA loans." It was sent "[b]ecause it's required under the pre-conditions for foreclosure. We have to try to meet with the borrower face-to-face." The Loan Care specialist stated that the letter was: addressed to the Borrowers, sent to the property address, and sent by USPS certified mail. As additional confirmation that the letter was sent by certified mail, the witness identified the USPS certified mail tracking number.

The Borrowers, a husband and wife, testified. The wife acknowledged signing the note and mortgage. She testified that although she received loan mitigation documents and correspondence about force-placed insurance, she did not recall receiving letters through certified mail from Lakeview. The husband acknowledged the mortgage was in default but denied knowing anything else, because his wife handled everything.

At the close of Lakeview's case-in-chief, the Borrowers moved for involuntary dismissal, alleging Lakeview failed to satisfy a condition precedent to bringing the foreclosure suit. They stated paragraph 9(a) and (d) of the mortgage contained provisions incorporating HUD regulations:

> (a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument . . . .
>
> . . .
>
> (d) Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does

not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

The Borrowers maintained that one HUD regulation, 24 C.F.R. § 203.604, required Lakeview to hold a face-to-face interview with the mortgagor or "make a reasonable effort" to hold one "before three full monthly installments due on the mortgage are unpaid." They asserted doing so was a condition precedent to bringing the foreclosure suit.

They argued they were entitled to an involuntary dismissal because there was not a face-to-face interview. Nor could Lakeview avail itself of any of the exceptions to holding the interview. The Borrowers argued Lakeview had not shown it made reasonable efforts to schedule an interview by a certified letter because it did not produce a return receipt.

The court ruled from the bench: Because the Borrowers sufficiently pleaded failure to comply with 24 C.F.R. § 203.604, Lakeview needed to overcome the allegation. Under the facts of the case, the only applicable exception to holding a face-to-face interview was proof that Lakeview made "reasonable efforts" to schedule the meeting. Lakeview could do so by showing it visited the Borrowers at least once to attempt a face-to-face interview and by showing it sent a letter by certified mail asking to schedule the interview. The court found Lakeview failed to meet its burden. As to the first prong, Lakeview presented sufficient circumstantial evidence that a representative tried to personally meet the Borrowers. But as to the second prong, the court found the omission of a return receipt from the USPS fatal. For those reasons, the court granted the Borrowers' motion and dismissed the complaint.

Lakeview moved for reconsideration. The court granted Lakeview's motion, limiting the scope of rehearing to 24 C.F.R. § 203.604's face-to-face interview requirement. But unmoved by Lakeview's arguments on rehearing, the court entered final judgment for the Borrowers.

### *Analysis*

The HUD enacted regulations relating to mortgage foreclosures for federally backed loans. *See* 24 C.F.R. §§ 203.500-203.608 (2019). At issue is 24 C.F.R. § 203.604, "an obscure provision contained in a federal administrative regulation." *Lee v. CitiMortgage, Inc.*, 739 F. Supp. 2d 940, 944 (E.D. Va. 2010).

Under 24 C.F.R. § 203.604(b), a mortgagee must hold a face-to-face interview with the mortgagor or "make a reasonable effort" to hold one

"before three full monthly installments due on the mortgage are unpaid." Exceptions to the face-to-face interview include instances when a mortgagor does not reside on the mortgaged property; a mortgagor suggests she will not cooperate in the interview; the mortgaged property is more than 200 miles from the mortgagee; there is an agreed repayment; or "[a] reasonable effort to arrange a meeting is unsuccessful." 24 C.F.R. § 203.604(c)(1)–(5).

The regulation clarifies the minimum actions required to comply with the "reasonable efforts" exception:

> (d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property.

24 C.F.R. § 203.604(d). This case turns on the interpretation of this provision.

Recently, in *PennyMac Loan Services LLC v. Ustarez*, No. 4D19-3547, 2020 WL 5541982 (Fla. 4th DCA Sept. 16, 2020), we explained that the same "HUD regulation . . . is not, in and of itself, a condition precedent to foreclosure." *Id.* at *2. Nevertheless, we held that compliance with the HUD regulation had been "self-impose[d]" as a contractual requirement that must be satisfied before the lender could accelerate or foreclose. *Id.*

We understand *PennyMac*'s holding to be that the HUD regulation is not a *statutory pre-condition* to foreclosure applicable to all mortgage foreclosure suits. Instead, *PennyMac* concluded that incorporation of the HUD regulation into a note or mortgage constituted a self-imposed *contractual pre-condition* to foreclosure. Regardless of the precise words used in the opinion, in *PennyMac* this Court concluded compliance with the HUD regulation was a condition the lender had to satisfy prior to foreclosing because the language of the mortgage or note specifically required it.

4

In this case, because the HUD regulations were incorporated into the mortgage, Lakeview was required to substantially comply with the HUD regulation prior to accelerating the obligation or filing the foreclosure complaint. The circuit court erroneously concluded it did not do so.

The circuit court's involuntary dismissal turned on the language in the HUD regulation stating that Lakeview must make a "reasonable effort to arrange a face-to-face meeting with the mortgagor," and that the reasonable effort "shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched." *See* 24 C.F.R. § 203.604(d).

The circuit court found that Lakeview made "a reasonable attempt" to "reach out for a face-to-face" meeting. But it concluded that Lakeview needed to introduce evidence of a return receipt "green card" from USPS. We do not interpret the regulation as limiting the manner of establishing compliance to the introduction of the USPS green card.

"Administrative rules must be interpreted according to their plain language whenever possible." *Smith v. Sylvester*, 82 So. 3d 1159, 1161 (Fla. 1st DCA 2012) (citation omitted). Without a statutory definition, "courts must look to [the regulation's] plain and ordinary meaning, which can be discerned from a dictionary." *Gyongyosi v. Miller*, 80 So. 3d 1070, 1075 (Fla. 4th DCA 2012) (citation omitted). Here, we focus on the definitions of "certify" and "dispatch."

The term "certify" is defined as "confirm[ing] formally as true, accurate or genuine," *certify*, *The American Heritage Dictionary of the English Language* 304 (5th ed. 2016), and "to attest authoritatively [or] . . . to attest as being true or as represented or as meeting a standard," *certify*, *Merriam-Webster's Collegiate Dictionary* 203 (11th ed. 2003). Similarly, Black's Law Dictionary defines "certify" as "1. [t]o authenticate or verify in writing. 2. [t]o attest as being true or as meeting certain criteria." *Certify*, *Black's Law Dictionary* (11th ed. 2019).

"Dispatch," on the other hand, is defined as "[t]he act of sending off, as to a specific destination," *dispatch, The American Heritage Dictionary of the English Language* 520 (5th ed. 2016), and "to send off or away with promptness or speed," *dispatch, Merriam-Webster's Collegiate Dictionary* 361 (11th ed. 2003). Black's Law Dictionary defines dispatch as "[a] prompt sending off of something." *Dispatch, Black's Law Dictionary* (11th ed. 2019).

5

Thus, to certify a letter has been dispatched generally means to confirm or attest to the prompt or speedy sending off of something. The question then is how a plaintiff may prove compliance with the regulation.

Although this is an issue of first impression in Florida, other jurisdictions have considered the issue and reached different results. For example, in *PNC Bank, National Association v. Wilson*, an Illinois Appellate Court held the "plain and ordinary meaning of section 203.604(d) require[d] proof from the United States Postal Service that the letter was sent." 74 N.E.3d 100, 106 (Ill. App. Ct. 2017) (citation omitted). But, in that case, even though the bank did not include USPS proof, the court found that the bank's failure did not bar foreclosure because it was a "technical defect" that did not prejudice the borrower. *Id.* at 107.

In contrast, in *Dan-Harry v. PNC Bank, N.A.*, No. 17-136 WES, 2019 WL 1253481 (D.R.I. Mar. 18, 2019), the borrower argued, in part, that the HUD regulation mandated nothing less than proof of mailing from the United States Post Office. *Id.* at *1. Unpersuaded by the borrower's "creative construction of 24 C.F.R. [§] 203.604(d)," the United States District Court of Rhode Island held that the regulation did not limit the type of proof a party could rely on to show compliance. *Id.* at *2. Citing cases from various jurisdictions, the court also noted the borrower's asserted narrow requirement of proof ran "contrary to the overwhelming weight of authority." *Id.* (citing *Aazami v. Wells Fargo Bank, N.A.*, No. 3:17-cv-01564-BR, 2019 WL 281286, at *8 (D. Or. Jan. 22, 2019); *Campbell v. Wells Fargo Bank, N.A.*, No. 1:14-cv-03341-TWT-JFK, 2016 WL 6496458, at *8 (N.D. Ga. Oct. 6, 2016), *adopted by* No. 1:14-CV-3341-TWT, 2016 WL 6462070 (N.D. Ga. Nov. 1, 2016); *Countrywide Home Loans, Inc. v. Wilkerson*, No. 03 C 50391, 2004 WL 539983, at *1 (N.D. Ill. Mar. 12, 2004); *Wash. Mut. Bank v. Mahaffey*, 796 N.E.2d 39, 44 (Ohio Ct. App. 2003)).

We agree with those courts holding the plain language of 24 C.F.R. § 203.604(d) does not require a certified mail receipt from the USPS to establish compliance. As used in the regulation, the terms "certify" and "dispatch" require the "authentication or verification" of a "prompt sending off" of the certified letter. No doubt the lender must introduce evidence to confirm compliance with the regulation. But the regulation does not limit how a lender can prove such compliance.[1]

---

[1] In *Wilson*, 74 N.E.3d at 106-07, the Illinois Appellate Court held that a return receipt from the United States Postal Service was needed to establish compliance with the regulation. But the court still allowed the foreclosure to continue, finding it a technical violation and that the plaintiff substantially complied with

Lakeview did not have to introduce a USPS return receipt card. Lakeview needed to introduce evidence to prove its foreclosure claim, which included acceleration of the obligation. Because, under the mortgage, acceleration and foreclosure were "not authorized" absent compliance with the HUD regulations, Lakeview was required to introduce evidence that it complied with the regulations to establish acceleration. *See PennyMac Loan Services LLC*, 2020 WL 5541982, at *2.

Lakeview established compliance through the Loan Care specialist's testimony. The Loan Care specialist identified the letter sent to the Borrowers requesting a face-to-face meeting. The Loan Care specialist explained that the letter, admitted as an exhibit without objection, was sent to the Borrowers at the property address and was sent via USPS certified mail. She also identified the USPS certified mail tracking number. This testimony was sufficient to establish a "reasonable effort" under 24 C.F.R. § 203.604(d). *See, e.g., Deutsche Bank Tr. Co. Americas as Tr. for Residential Accredit Loans, Inc. v. Harris*, 264 So. 3d 186, 192 (Fla. 4th DCA 2019).

### *Conclusion*

Lakeview was required to substantially comply with the "self-imposed" HUD regulations prior to accelerating the obligation or filing the foreclosure suit. *See PennyMac Loan Services LLC*, 2020 WL 5541982, at *2. As explained above, Lakeview established it substantially complied with the regulation. Thus, we reverse the court's judgment and remand for further proceedings.

*Reversed and remanded.*

FORST, J., concurs.
GROSS, J., concurs specially with opinion.

GROSS, J., specially concurring.

I concur in the majority opinion and write for two reasons—to distinguish this case from *PennyMac Loan Services LLC v. Ustarez*, ___ So. 3d ___, 2020 WL 5541982 (Fla. 4th DCA Sept. 16, 2020), and to

---

the HUD regulations. *Id.* at 107. Similarly, Lakeview argues that the Borrowers' failure to establish prejudice excuses any violation. Our resolution of the other argument renders this issue moot.

demonstrate how problematic language in that opinion may be disregarded as dicta.

Because *PennyMac* floats like a virus in the legal ether, the majority opinion characterizes Lakeview's compliance with the applicable HUD regulations in this case as a "self-imposed" "requirement before the lender could accelerate or foreclose." Where such a self-imposed requirement arises from a contract, the law (except for *PennyMac*) describes this requirement as a "condition precedent."

Generally, conditions precedent to performance "are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Reilly v. Reilly*, 94 So. 3d 693, 697 (Fla. 4th DCA 2012) (quoting *Chipman v. Chipman*, 975 So. 2d 603, 607 (Fla. 4th DCA 2008)); *see also Racing Props., L.P. v. Baldwin*, 885 So. 2d 881, 882–83 (Fla. 3d DCA 2004) (stating that a condition precedent "is a condition which calls for the performance of an act after a contract is entered into, upon the performance or happening of which its obligation to perform is made to depend").

Where a note and mortgage incorporate the HUD regulations, such incorporation renders compliance with the regulation a condition precedent to foreclosure. *See, e.g., Harris v. U.S. Bank Nat'l Ass'n*, 223 So. 3d 1030, 1032 (Fla. 1st DCA 2017); *Palma v. JPMorgan Chase Bank*, 208 So. 3d 771, 774–75 (Fla. 5th DCA 2016); *Diaz v. Wells Fargo Bank, N.A.*, 189 So. 3d 279, 284–85 (Fla. 5th DCA 2016).

For example, in *Palma*, the note and mortgage incorporated the HUD regulations. 208 So. 3d at 775. The court found that when a note and mortgage incorporate HUD regulations, those regulations operate the same as other conditions of the note and mortgage. *Id.* In the court's view, there was "no meaningful reason to treat compliance with section 203.604 in an FHA mortgage differently than compliance with paragraph twenty-two in a standard mortgage, which [the] court ha[d] determined [was] a condition precedent to foreclosure." *Id.*

Similarly, in *Harris*, the First District focused on contract documents' incorporation of the HUD regulations. 223 So. 3d at 1030. There, the note and mortgage specifically referenced compliance with the HUD regulations. *Id.* at 1032. Thus, "the Bank's right to foreclose on the mortgage d[id] not arise unless and until [the] conditions ha[d] been satisfied, making the HUD regulation at issue a condition precedent." *Id.* Likewise, this same analysis was adopted in *Chrzuszcz v.*

8

*Wells Fargo Bank, N.A.,* 250 So. 3d 766, 769 (Fla. 1st DCA 2018) (finding *Palma* to be the "most analogous" case), and in *Derouin v. Universal American Mortgage Co.,* 254 So. 3d 595, 599–600 (Fla. 2d DCA 2018).

Unlike the situation where contract documents incorporate the HUD regulations, in *Diaz,* the borrower's note and mortgage did not reference those regulations. 189 So. 3d at 284. Because the documents were silent, "it [was] by no means clear that the HUD regulations applicable to federally insured loans appl[ied] to the instant loan and litigation." *Id.* The court held that when "it is unclear whether alleged conditions precedent apply, the burden is on the party asserting the existence of the conditions precedent to establish their applicability." *Id.* at 285.

In *PennyMac,* the panel "agree[d]" with the lender's argument "that 24 C.F.R. § 203.604 does not operate as a condition precedent to foreclosure, as it is an administrative regulation subject to monetary sanctions and not a bar to filing a foreclosure complaint." 2020 WL 5541982, at *2. The panel wrote that the "pertinent HUD regulation . . . is not, *in and of itself,* a condition precedent to foreclosure." *Id.* (italics supplied). The important phrase is "in and of itself," because it brings the analysis in line with those cases, such as *Diaz,* where the note and mortgage did not reference the HUD regulations.

This *PennyMac* discussion is dicta because the note and mortgage in that case *did* incorporate the HUD regulations, so it was unnecessary to analyze the effect of the failure to so incorporate.

*PennyMac* went on to note that "the text of the Borrower's note and mortgage does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary." *Id.* (internal quotation marks omitted). The panel explained that through incorporation of the HUD regulations in the mortgage, the lender "contractually agreed to self-impose the HUD regulation on itself before accelerating and foreclosing here." *Id.*

A contractual agreement "to self-impose the HUD regulation on itself before accelerating and foreclosing" sounds exactly like . . . a condition precedent.

What's in a name? In the law, sometimes quite a lot. *PennyMac*'s suggestion that the functional equivalent of a condition precedent is something different unnecessarily injects confusion into the law.

For example, to plead "the performance or occurrence of conditions

9

precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred." Fla. R. Civ. P. 1.120(c). "A denial of performance or occurrence shall be made specifically and with particularity." *Id.* If a contractual agreement "to self-impose the HUD regulation" is not a condition precedent, then it must be pled as a defense under Florida Rule of Civil Procedure 1.140(b).

The mischaracterization of a condition precedent alters the burden of proof. If compliance with the HUD regulation is a condition precedent to foreclosure, the plaintiff carries the burden of proving substantial compliance with the condition when it presents its case, so long as the borrower has made a specific denial of the plaintiff's allegation that it had satisfied all conditions precedent.[2] *See, e.g.*, *Chrzuszcz*, 250 So. 3d at 769–70. But if compliance with 24 C.F.R. § 203.604 is an affirmative defense, "[t]he defendant, as the one who raises the affirmative defense, bears the burden of proving that affirmative defense." *Id.* at 769 (citing *Custer Med. Ctr. v. United Auto. Ins. Co.*, 62 So. 3d 1086, 1096 (Fla. 2010) ("An affirmative defense is an assertion of facts or law by the defendant that, if true, would avoid the action and the plaintiff is not bound to prove that the affirmative defense does not exist.")).

One of the unwritten rules of judging is to do no harm to settled law. *PennyMac* does the opposite. It sows confusion and conflicts with the well-reasoned opinions of other district courts of appeal. However, because the offending language is dicta, it is not binding authority. *See Lewis v. State*, 34 So. 3d 183, 186 (Fla. 1st DCA 2010) (observing that "[w]hen a court makes a pronouncement of law that is ultimately immaterial to the outcome of the case, it cannot be said to be part of the holding in the case").

*      *      *

***Not final until disposition of timely filed motion for rehearing.***

---

[2] It makes sense that the plaintiff bank should bear the burden of proof of its compliance with a HUD regulation because it has unfettered access to the evidence of its own compliance.